UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

HUNG QUOC LAI,                                                           Petitioner,

v.                                                     Civil Action No. 3:26-cv-422-DJH

JEFF TINDALL, Jailer, Oldham County
Detention Center et al.,                                               Respondents.

* * * * *

**<u>MEMORANDUM AND ORDER</u>**

Petitioner Hung Quoc Lai, a noncitizen resident of Kentucky currently detained in the Western District of Kentucky, seeks a writ of habeas corpus following the revocation of an order of supervision.  He alleges that his detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment.  (Docket No. 1)  The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 4), and they have submitted briefing setting out their respective legal arguments (D.N. 6; D.N. 7).  After careful consideration, the Court will grant Lai's petition for the reasons explained below.

**I.**

Lai is a native and citizen of Vietnam.  (D.N. 1, PageID.1 ¶ 1; *see* D.N. 6-1, PageID.36) He entered the United States in 1984 as a lawful permanent resident and has lived in the country since then.  (D.N. 1, PageID.1 ¶ 1; *see* D.N. 6-1, PageID.37)  In 2002, Lai was convicted in Florida of "three . . . counts of the felony offense of L[ewd]/Lascivious Battery."  (D.N. 6-1, PageID.38) On September 26, 2016, U.S. Immigration and Customs Enforcement (ICE) officials arrested Lai in Louisville, Kentucky, and issued him a Notice to Appear, which commenced removal

1

proceedings. (*See id.*, PageID.37) On January 12, 2017, an immigration judge ordered that Lai be removed to Vietnam. (*See id.*; D.N. 6-2, PageID.39) Lai was granted release under an order of supervision (OSUP) on July 28, 2017 (*see* D.N. 1-4, PageID.20–21), because there was "no significant likelihood of [his] removal" from the United States "in the foreseeable future." (D.N. 6-1, PageID.38) On May 10, 2026, ICE revoked Lai's OSUP; the Notice of Revocation stated that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and that "ICE is seeking a travel document to effect [Lai's] expeditious removal to Vietnam." (D.N. 6-3, PageID.41–42) On May 20, 2026, ICE officials arrested Lai in Louisville "during a targeted enforcement operation following a vehicle stop." (D.N. 6-1, PageID.37) He remains detained at the Oldham County Detention Center in La Grange, Kentucky. (*See* D.N. 1-1, PageID.16)

Lai seeks a writ of habeas corpus against Oldham County Jailer Jeff Tindall, the Chicago ICE Field Office Director, Acting Director of ICE David Venturella, Department of Homeland Security (DHS) Secretary Markwayne Mullin, and Acting U.S. Attorney General Todd Blanche. (*See* D.N. 1, PageID.5 ¶¶ 19–23) Lai alleges that his detention violates the Immigration and Nationality Act, 8 U.S.C. § 1231; accompanying regulations regarding his OSUP; and due process under the Fifth Amendment. (*See id.*, PageID.8–13 ¶¶ 32–61) He seeks immediate release. (*See id.*, PageID.14) Respondents argue that Lai is mandatorily detained under 8 U.S.C. § 1226(c) due to his battery conviction.[1] (*See* D.N. 6, PageID.34–35)

---

[1] Respondents do not contest that the Court has jurisdiction to review Lai's petition (*see generally* D.N. 6). *See Lopez v. Olson*, 815 F. Supp. 3d 576, 580 (W.D. Ky. 2025) ("Section 2241 [of title 28] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))). Nor do Respondents argue whether Lai must exhaust administrative remedies. (*See generally* D.N. 6) The Court therefore will not address those issues.

## II.

### A.      Immigration and Nationality Act

Respondents argue that 8 U.S.C. § 1226(c) requires Lai's detention on the ground that his battery conviction constitutes an aggravated felony.  (*See id.*, PageID.34–35)  In reply, Lai argues that § 1226 does not govern his detention because he is not detained "pending a decision" on his removal and that even if § 1226(c) applied, recent changes to that provision via the Laken Riley Act do not apply retroactively to his 2002 conviction.  (*See* D.N. 7, PageID.46–47 (quoting § 1226(a)))

"While § 1226 governs the detention of aliens . . . during their removal proceedings, once an alien has received a final order of removal, he is no longer subject to § 1226 detention[,] and instead the basis for his detention becomes 8 U.S.C. § 1231(a)." *Rose v. Tsoukaris*, No. 17-11592 (SDW), 2018 WL 2357755, at *2 (D.N.J. May 23, 2018) (citing *Leslie v. Att'y Gen.*, 678 F.3d 265, 268–69 (3d Cir. 2012)); *see Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1283 (S.D. Ala. 2008) ("Once the removal order became final, Elcock was no longer being detained pursuant to § 1226(c), which governs detention prior to a final removal order."); *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (explaining § 1231's application "[o]nce an alien is ordered removed").  "[A]n order of removal entered by an [immigration judge] becomes final upon waiver of appeal to the [Board of Immigration Appeals]." *Ako v. Holder*, 477 F. App'x 346, 348 (6th Cir. 2012) (per curiam) (citation modified); *see* 8 C.F.R. § 1003.39.  Here, Lai's removal order became final on January 12, 2017, because appeal of that decision was waived.  (*See* D.N. 6-2, PageID.39)  Thus, § 1231, not § 1226, governs Lai's detention. *Ako*, 477 F. App'x at 348; *Rose*, 2018 WL 2357755, at *2; *Elcock*, 554 F. Supp. 2d at 1283.

3

**B.    Process Due Under Applicable Regulations**

"Section 1231 generally governs the process for when noncitizens are detained, issued an order of removal, and subject to removal and supervision." *K.E.O. v. Woosley*, No. 4:25-cv-74-RGJ, 2025 WL 2553394, at *3 (W.D. Ky. Sep. 4, 2025). "Once an alien is ordered removed, DHS must physically remove him from the United States within a 90-day 'removal period'" under § 1231. *Guzman Chavez*, 594 U.S. at 528 (quoting § 1231(a)(1)(A)). "[A]n alien who is not removed within the 90-day removal period will be released subject to supervision." *Id.* at 529 (citing 8 U.S.C. § 1231(a)(3); 8 C.F.R. § 241.5).

Pursuant to regulations accompanying 8 U.S.C. § 1231, a noncitizen may be placed under an order of supervision if he "demonstrates to the satisfaction of the Attorney General . . . that his . . . release will not pose a danger to the community or to the safety of other persons or to property or a significant risk of flight pending [his] removal." 8 C.F.R. § 241.4(d)(1); *see K.E.O.*, 2025 WL 2553394, at *3. Moreover, 8 C.F.R. § 241.13 "governs revocation of OSUP when ICE has previously made a determination that there is no significant likelihood of removal in the reasonably foreseeable future." *Choy v. Woosley*, No. 4:25-cv-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026) (citation modified). "Once ICE has made that determination, ICE may subsequently revoke the alien's release and return the alien to custody if, on account of changed circumstances, it determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* (citation modified). "Upon revocation, the alien will be notified of the reasons for revocation of his or her release, and ICE will conduct an initial informal interview to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* (citation modified). "If the alien is not released from custody following the informal interview, the provisions of § 241.4 shall govern the alien's continued detention pending

4

removal." *Id.* (citation modified).  "When § 241.13(i) governs revocation, the procedures outlined for revocation under § 241.4(*l*) do not apply."  *Id.* (citing *Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at *5 (D. Minn. Jan. 6, 2026)).

Here, the government explicitly invoked § 241.13 in the Notice of Revocation.  (*See* D.N. 6-3, PageID.41)  Moreover, the Notice stated that the decision to detain Lai was based on "[c]ircumstances [that] have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" (*id.*), "language that parrots § 241.13(i)(2)."  *Choy*, 2026 WL 324601, at *3.  Section 241.13 also applies here because the Notice of Revocation invoked it.  *See Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502, at *2 (D. Kan. Sep. 26, 2025).  Because Lai's OSUP was revoked pursuant to that provision, he was entitled to notice and an interview.  *See Choy*, 2026 WL 324601, at *3 (citing § 241.13(i)(3)).

## C.    Lack of Meaningful Notice and Inadequacy of Interview

"When ICE re-detains an individual under § 241.13, the regulation requires '(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future.'"  *Id.* at *4 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023)); *see* 8 C.F.R. § 241.13(i)(2).  "ICE's explanation for revoking a petitioner's supervision should provide adequate notice of the basis for the revocation decision such that [he] can meaningfully respond at the post-detention informal interview."  *Id.* (citation modified).  "Simply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough.  Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond."  *Id.* (quoting *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 787 (D. Minn. 2025)).

The Notice provided to Lai stated that "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future" and that "ICE is seeking a travel document to effect [his] expeditious removal to Vietnam." (D.N. 6-3, PageID.41–42) Such "boiler plate language is simply insufficient to give notice under § 241.13" because it did not tell Lai what circumstances had changed or why removal was significantly likely. *Ahmed v. Olson*, No. 26-89-DLB, 2026 WL 836123, at *4 (E.D. Ky. Mar. 26, 2026); *see id.* (collecting cases rejecting similar language as insufficient for notice); *see also Sarail A.*, 803 F. Supp. 3d at 787; *Choy*, 2026 WL 324601, at *5 (finding nearly identical language insufficient to provide notice and observing that "[t]he mere request of a travel document by ICE is not a changed circumstance supporting re-detention under § 241.13" (citations omitted)).

Moreover, the "initial informal interview" was conducted on May 20, 2026, the date of Lai's arrest. (D.N. 6-3, PageID.43; *see* D.N. 6-1, PageID.37) According to the government's documentation of the interview, Lai presented no "oral response" and "did not provide a written statement" as to the reasons for revocation. (D.N. 6-3, PageID.43) But Lai could not meaningfully respond to the Notice given its lack of detail regarding "changed" circumstances and the fact that the interview occurred on the same day that Lai was arrested (*id.*, PageID.41). *Choy*, 2026 WL 324601, at *4; *see Abdullah v. Noem*, No. 26-cv-176-BJC-BLM, 2026 WL 559774, at *3 (S.D. Cal. Feb. 27, 2026) ("Conducting the interview on the same day Petitioner was detained without any advance notice and no opportunity to obtain documents or provide a thorough written response denies Petitioner the ability to meaningfully respond to the reasons for his revocation." (citing *Hagos v. Noem*, No. 3:26-cv-150-JES-DEB, 2026 WL 202873, at *3 (S.D. Cal. Jan. 27, 2026))).

For the reasons explained in *Choy* and in the decisions of other courts that have considered the same issue, the government's failure to comply with § 241.13 violated Lai's due-process rights.

6

*See Choy*, 2026 WL 324601, at *6–7; *Ahmed*, 2026 WL 836123, at *5; *K.E.O.*, 2025 WL 2553394, at *6; *see also Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *7 (D.R.I. Jan. 2, 2026) ("ICE's failure to provide a noncitizen with adequate notice of its basis for revoking supervised release violates the noncitizen's due process rights." (citations omitted)); *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *6 (D. Md. Aug. 25, 2025) (concluding that failure to properly inform a noncitizen "of the basis for the revocation of his release necessarily violates due process because it thwarts his ability to contest that action"). The Court will therefore order Lai's release, subject to the conditions of his preexisting OSUP. *See Choy*, 2026 WL 324601, at *7 (ordering release subject to conditions of previous OSUP); *Ahmed*, 2026 WL 836123, at *6 (finding that "the only appropriate remedy is immediate release pursuant to the conditions of Petitioner's preexisting OSUP" and collecting cases ordering release for the same violation).

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Lai's habeas petition (D.N. 1) is **GRANTED**.  Respondents are **DIRECTED** to immediately release Lai, subject to the conditions of his preexisting Order of Supervision. Respondents **SHALL** provide Lai with notice and an interview that comply with the relevant regulations if they seek to re-detain him.  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **July 28, 2026**.

(2)     Upon receipt of the notice of compliance, this matter will be **CLOSED**.


July 24, 2026

David J. Hale, Chief Judge
United States District Court

8